UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

JAN 1 2 2012

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

UNITED STATES OF AMERICA )
)
v. )
) Criminal No. 08-145 (RCL)
)
LARRY BRINSON-SCOTT, )
)
Defendant. )
)

## MEMORANDUM AND ORDER

This matter comes before the Court on remand [41] from the D.C. Circuit Court of Appeals for adjudication of the defendant's claim of ineffective assistance of counsel. Upon consideration of the defendant's memorandum [38], the government's opposition [39], the defendant's reply [40], the entire record herein, and the applicable law, the Court will dismiss the defendant's claim.

### I. BACKGROUND

A grand jury indicted the defendant on one count of possession with intent to distribute 50 grams or more of cocaine base (crack), in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii) ("Count One"), and possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a), (b)(1)(C) ("Count Two"), on May 15, 2008. The events leading up to the defendant's arrest began while he was a passenger in a car with his brother, Jonathan Cayol, in a vehicle driven by a friend. Officers of the Washington, D.C. Metropolitan Police Department stopped the vehicle at a checkpoint, and the friend could not produce identification or registration. The officers ordered the three individuals out of the car and asked Mr. Cayol for consent for a pat-down search. During the pat-down search, an officer discovered a .40 caliber handgun and arrested Mr. Cayol. The police received a warrant to search Mr. Cayol's apartment, apartment

203 at 3411 A Street S.E., Washington, D.C., which was executed on April 10, 2008. Mr. Brinson-Scott, a resident of the apartment, was the only individual present in the apartment during the search. The search revealed about 67 grams of powder cocaine, 183 grams of crack, and drug paraphernalia.

According to testimony from officers executing the search warrant, the police handcuffed the defendant and sat him in a chair at the beginning of the search for security purposes. During the first portion of the search, officers retrieved a 59.3 gram bag of cocaine in a glove left in a jacket pocket in the left bedroom. That bedroom contained articles of clothing that while too large for Mr. Cayol would be appropriately sized for the defendant. Officers also retrieved from the left bedroom an identification card for and mail addressed to the defendant. Further, officers found a variety of empty ziplock bags in different locations in the house. During this initial portion, the defendant remained calm and collected, but officers noted that he sat in his seat suspiciously, with all his weight shifted to one side. Once officers decided to search the chair in which he sat for narcotics, the defendant became increasingly agitated. The officers recovered a bag containing 170.2 grams of crack from the chair, and the defendant began a series of outbursts directed at the officers that elicited responses from them. During this exchange, the defendant initially disclaimed ownership of the crack, then grew steadily angry, eventually kicking a nearby video game console. At one point, according to the testimony of Officer Mark Nassar, the defendant "advised them that he was from the ghetto, what did they expect him to do, and they weren't from the ghetto." Mot. Tr. Aug. 8, 2008, at 62.[1] Soon after this exchange, the police placed the defendant under arrest.

---

[1] The defendant's comments were described at trial in various other formulations, including, "You don't know what it's like to grow up in this neighborhood. What else are we supposed to do? . . . You got nothing else to do but hustle," Trial Tr. Nov. 4, 2008, at 59, and "this is where I'm from, what was I supposed to do?," Trial Tr. Nov. 6,

The defendant filed a motion to suppress [6] physical evidence and statements on June 27, 2007. In that motion, the defendant challenged the admissibility of, *inter alia*, statements he made during the search. Specifically, the defendant sought to suppress his response to a question regarding which of the two bedrooms in the apartment was his; his statements such as "he was from the ghetto, what did they expect him to do"; his later explanation that he stays in the right bedroom but leaves some stuff in the left; his response to a question regarding the location of his keys; and, following his arrest and his placement in a transport vehicle, his request to the police that they retrieve his inhaler from the left bedroom.

Judge Kennedy ruled on the motion during an August 8, 2008 hearing. Judge Kennedy suppressed the third statement at issue—the defendant's clarification that he stays in the right bedroom but leaves some stuff in the left. Judge Kennedy found that the government failed to prove that the defendant did not make this statement in response to a custodial interrogation for the purposes of *Miranda v. Arizona*, 384 U.S. 436 (1966). However, Judge Kennedy determined that the other four statements at issue were not the products of a custodial interrogation and thus were admissible.

At the suppression hearing, Officer Vicki Steen had noted that before the defendant made the inculpatory statements such as "he was from the ghetto, what did they expect him to do," Officer Jody Shegan had asked the defendant to "calm down." Mot. Tr. Aug. 8, 2008, at 53. At trial, Officer Shegan's testimony provided more specificity:

> A. I told [the defendant] to calm down. It was all part of the game. Sometimes you win, sometimes you lose, and this time we found it. No reason to get angry. It's not personal. It's our job. And the hiding spot wasn't that good. No reason to get mad.

---

2008, at 115. The sentiment—what appears to be a confession of illicit activity and an excuse for that activity—is essentially identical regardless of the exact phrasing.

> Q. Do you recall anything specific that he said to you?
>
> A. Yes. He said, during his conversation back and forth, that he had no choice, wasn't his choice, he grew up in the neighborhood, and there was no choices. And I told him everybody has choices, some people make bad ones.

Tr. Nov. 6, 2008, at 42-43. The defendant did not renew his motion to suppress at this point.

Following the trial, the government summarized its evidence in closing arguments. The government first discussed the crack offense, then moved on to the cocaine offense. In attempting to establish the defendant's constructive possession of the crack, the government stressed that the defendant held a lease along with Mr. Colay for the apartment and owned keys for the apartment; the defendant's strange posture in his chair and his agitation when the officers elected to search the chair; his statements, immediately after the officers retrieved the crack, that the narcotics were not his; his increasing anger following its retrieval; his statements that he "had no choice to hustle"; and his prior criminal conduct. Trial Tr. Nov. 7, 2008, at 74-81. In attempting to establish the defendant's possession of cocaine, the government additionally stressed the presence of identification of and mail for the defendant in the room in which police found the cocaine; the presence of his inhaler in that room; the cocaine's location in the pocket of a jacket sized appropriately for the defendant, but not for Mr. Colay; and the dollar value, $9,000, of the cocaine recovered from that jacket. Trial Tr. Nov. 7, 2008, at 82-83.

The jury convicted the defendant on Count Two (the cocaine count), but could not return a verdict on Count One (the crack count). Judge Kennedy sentenced the defendant to a term of imprisonment of 140 months on January 30, 2009. The defendant filed a notice on appeal on February 9, 2009. Counsel on appeal while reviewing the record discovered a purported claim of ineffective assistance of counsel. The defendant filed a motion in the D.C. Circuit Court of Appeals to stay the appeal and remand the case to the district court for consideration of that

claim. The Court of Appeals issued an Order [41] holding the appeal in abeyance while this Court resolved the ineffective assistance of counsel claim.

## II. **DISCUSSION**

The defendant requests that the Court hold an evidentiary hearing on his claim of ineffective assistance of counsel so as to develop evidence regarding trial counsel's motivation in not renewing the motion to suppress at trial. However, an evidentiary hearing is unnecessary if "the trial record alone conclusively shows the defendant either is or is not entitled to relief," which the Court determines to be the case here. *United States v. Rashad*, 331 F.3d 908, 910 (D.C. Cir. 2003) (quotation omitted).

The Sixth Amendment guarantees not only a defendant's right to counsel, but also the effective assistance of that counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). A defendant seeking to invalidate a conviction based on his counsel's ineffectiveness must prove both deficient performance and prejudice. *Id.* at 687. A showing of deficient performance requires proof "that counsel failed to act reasonably considering all the circumstances." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) (quotations and internal modifications omitted). When the alleged deficiency is counsel's failure to raise a Fourth Amendment violation, the defendant "must show that the Fourth Amendment claim has merit." *United States v. Wood*, 879 F.2d 927, 934 (D.C. Cir. 1989). Further, "[d]efense counsel is not required to file a motion to suppress in every case in which evidence obtained by a search is offered against a defendant," because such a rule would require defense counsel to file a motion to suppress every potentially suppressible piece of evidence. *United States v. Brown*, 663 F.2d 229, 231 (D.C. Cir. 1980). In order to establish that a defendant has been prejudiced by counsel's deficient performance, the defendant must show "that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. This requires "a substantial, not just conceivable, likelihood of a different result." *Cullen*, 131 S. Ct. at 1403. In the Fourth Amendment context, there must be "a reasonable possibility that the verdict would have been different absent the excludable evidence." *Wood*, 879 F.2d at 934.

The defendant argues that trial counsel failed to act reasonably by not renewing the motion to suppress the inculpatory comments the defendant made soon after the officers discovered the crack under his chair ("what did they expect him to do"; *see supra* n.1 and accompanying text). According to the defendant, Officer Shegan's testimony at trial—that she spoke to the defendant at length about the discovery of crack ("It was all part of the game. . . .") before the defendant made the comments at issue—provided greater detail than the testimony at the suppression hearing, which indicated only that police attempted to get the defendant to "calm down." Officer Shegan's goading of the defendant, the defendant posits, constituted a custodial interrogation under the meaning of *Miranda*, and trial counsel's failure to renew the motion to suppress upon learning this constituted constitutional ineffectiveness.

Even assuming that trial counsel was deficient,[2] and that such a motion would have been successful, the defendant cannot establish prejudice. Crucially, the defendant made the comments at issue—"he was from the ghetto, what did they expect him to do," etc.—following the police's discovery of the *crack* in the chair. The most natural interpretation of those comments is that they refer to that substance, not the cocaine that, at that point, the defendant did not know the police had recovered. Although a jury could interpret these comments as relevant to possession of the cocaine, their most immediate relevance is to possession of the crack. And

---

[2] Courts often dispose of ineffective assistance of counsel claims by assuming deficient performance and simply analyzing prejudice, *see Strickland*, 466 U.S. at 697; *see also, e.g., United States v. Hughes*, 514 F.3d 15, 18 (D.C. Cir. 2008).

the jury hung with respect to the crack charge, but convicted the defendant on the cocaine charge. Apparently, the jury did not feel that the defendant's arguable confession, *i.e.*, that his environment forced him to commit the illegal acts of which the police had now found evidence of his guilt, conclusively established his guilt of the crack offense. If this statement, prompted by the discovery of the crack, did not convince the jury unanimously that the defendant possessed that crack, the statement likely carried little weight in the jury's determination of whether the defendant possessed the discovered cocaine.

Indeed, ample evidence established the defendant's possession of that cocaine. It was found in a room that contained a number of the defendant's possessions, in the pocket of a jacket that fit him but not his roommate. A jury ignoring the comments at issue could well determine beyond a reasonable doubt that the defendant possessed the jacket in which the cocaine was found, and thus possessed that cocaine. That same jury could also determine that the government had failed to establish who between the defendant and his roommate possessed the crack found in the chair. Put simply, it appears that the jury gave little probative weight to these comments, and their entrance at trial does not seem to have altered the jury's vote on the cocaine count. There is no "substantial . . . likelihood," *Cullen*, 131 S. Ct. at 1403, or "reasonable possibility that the verdict would have been different absent the excludable evidence," *Wood*, 879 F.2d at 934. *See also Sliney v. United States*, No. 05-33, 2006 U.S. Dist. LEXIS 70115, *27-29 (D.R.I. Sept. 12, 2006) (finding no prejudice in failure to move to suppress inculpatory statements because jury could find constructive possession where guns were found in an apartment in which defendant was present, even though defendant was not the only resident of the apartment). The government's showing that the police found cocaine in a jacket likely owned by the defendant, in addition to the defendant's prior convictions and the recovered

paraphernalia, provided more than enough evidence to convict the defendant on the cocaine charge.

### III. CONCLUSION

Even assuming trial counsel erred in failing to renew a motion to suppress following Officer Shegan's testimony, there is no reasonable probability that this error altered the outcome of the trial. It is therefore hereby

**ORDERED** that the defendant's claim is **DISMISSED**. The Clerk of the Court is directed to provide promptly a copy of this memorandum and order to the Clerk of the D.C. Circuit Court of Appeals.

**SO ORDERED** this 10th day of January 2012.

_____
ROYCE C. LAMBERTH
Chief Judge
United States District Court